IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> RAYAN SHARAF | Case No. 1:23-cr-00114-TSE |

### MOTION TO REVOKE DETENTION ORDER PURSUANT TO 18 USC §3145

COMES NOW the Defendant, RAYAN SHARAF, by counsel, and respectfully requests This Honorable Court GRANT Defendant's motion to revoke the detention order entered by Magistrate Judge Anderson on June 9th, 2023 and admit Defendant to pre-trial release in this matter subject to whatever conditions this Court deems reasonable and necessary.

This matter was assigned to the Honorable T. S. Ellis, III on Thursday, June 29th. However it appears from communications with the clerk of court that Judge Ellis may not available until approximately the week of July 17th to preside over a hearing in this matter.  As Defendant is currently incarcerated, Defendant respectfully requests that this matter be heard on an expedited basis by an available district court judge.

In support thereof, Defendant states as follows:

**Facts & Procedural History**

1. Defendant RAYAN SHARAF (aka 'Feras Ghousheh') is charged with one count of wire fraud in violation of 18 U.S.C. §1343 stemming from alleged activities involving the transfer of funds from bank accounts into various cryptocurrency trading platforms and then into separate bank accounts.

2. It is further alleged that Defendant would then contact the originating bank, contest the transfer to the cryptocurrency trading platform and the bank would refund Defendant in the amount of the original exchange resulting in losses to the cryptocurrency trading platforms.

3. In total, it is alleged that Defendant did unlawfully obtain approximately $305,000 through fraudulent means.

4. There appears to be no allegation that Defendant continued such alleged fraudulent activity beyond 2022 or that Defendant was presently engaged in any unlawful conduct as of the time of his arrest in June 2023.

5. Defendant has been cooperative with authorities and the parties have entered into a plea agreement whereby the government will proceed by information on one count of wire fraud.[1] The parties are free to argue enhancements/reductions at sentencing.

---

[1] Defendant has additionally consented to a waiver of his right to a speedy trial and an extension of the time within which to file an indictment by 30 days to facilitate a plea pursuant to an information before Judge Ellis.

**Rayan Sharaf/Feras Ghousheh**



6. Defendant Rayan Sharaf is 55 years old, married 33 years to his wife, a father of 4 and grandfather of 4.

7. He has resided continuously in the Eastern District of Virginia for ten years and at the home they purchased in Centreville in 2016 with his wife and adult daughter for approximately seven years.

8. Defendant was born Feras Ghousheh in the country of Jordan in 1968. He moved to the United States in 1987, initially residing in Falls Church, Virginia. He married his wife in 1990.

9. The young couple had four children: Q.G. (son) born in 1992; F.G. (daughter) born in 1995; H.G. (daughter) born in 1996 and M.G. (daughter) born in 1998.

3

10. In 2001 Feras became a naturalized United States citizen. He was permitted to retain dual citizenship through an agreement between the governments of the United States and his country of birth, the Kingdom of Jordan.

11. In 2003 Feras and his wife moved their family to Jordan to live near his aging parents for approximately ten years.

12. In 2013 the family returned to the United States, residing again in Falls Church, Virginia.

13. The family moved to Centreville, Virginia in 2016 when Feras and his wife purchased the home in which they currently reside.

14. Feras legally changed his name in 2017 from 'Feras Ghousheh' to 'Rayan Sharaf,' 'Sharaf' being the surname of his wife. The order was entered by the Fairfax County Circuit Court.

15. Defendant also updated his United States passport in that general timeframe to reflect the legal name change.

16. Defendant worked upon his return to the United States as a manager at Long John Silver's fast-food chain.

17. After about 4-5 years, Defendant began working full-time as an online day-trader. Defendant dealt only with his own or family assets.

18. Prior to his arrest in June 2023, Defendant traveled abroad approximately 3-4 times per year, largely for purposes of major family events (weddings, funerals) in Jordan and to visit a close friend who fled Ukraine and now resides in Poland.

19. Defendant's wife, children and grandchildren all reside in the United States. Furthermore, Defendant's wife, son Q.G., daughter F.G. and one granddaughter all reside in Centreville, Virginia as do two of Defendant's adult brothers and their families.

20. When this matter was initially brought for a detention hearing before the magistrate judge, pretrial services recommended release on a personal recognizance with the following conditions:

    a. Pretrial Services supervision;
    b. Surrender passports to Pretrial Services;
    c. Not obtain new passport or other travel documents;
    d. Not depart the Washington, D.C. metropolitan area without prior approval of Pretrial Services or the Court;
    e. Refrain from any contact with any potential witnesses, co-conspirators, or victims related to the instant offense unless in the presence of counsel;
    f. No self-employment and all future employment to be approved in advance by Pretrial Services;
    g. Notify any future employer of the instant offense if deemed necessary by Pretrial Services;
    h. Not open any new lines of credit, loans, or bank accounts without prior approval of Pretrial Services or the Court; and
    i. Allow access to all financial records as requested by Pretrial Services.

21. Pretrial Services verified Defendant's brother Baker, who resides in Centreville with his family, as a recommended third-party custodian.

22. It should be noted that Mr. Sharaf's passports were all seized by federal law enforcement agents already.

**Law & Argument**

23. "The judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a), *unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.*" 18 U.S.C. §3142(b). (emphasis added).

24. "If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—

    (A) subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a); and (B) *subject to the least restrictive further condition, or combination of conditions*, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include . . ." 18 U.S.C. §3142(c). (emphasis added).

25. When risk of flight serves as the basis for detention, "the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

26. Mr. Sharaf is charged with one count of wire fraud, a non-violent felony offense.

27. There is no allegation that a firearm was used in the commission of the alleged crime nor were any firearms seized during the search of his residence on June 7th.

28. Mr. Sharaf has no previous convictions for crimes of violence.[2] He has no previous convictions for failure to appear in court.

29. No firearms or illegal narcotics were recovered as a result of the search warrant executed on June 7th, 2023.

30. There is no reason to believe that Mr. Sharaf's release would endanger the community or any other person.

31. There is no evidence of any plan or intention to flee this country or this jurisdiction.

---

[2] Mr. Sharaf does have a pending misdemeanor domestic assault matter in Fairfax County Juvenile & Domestic Relations District Court. Upon the insistence of the complaining witness, his wife, to dismiss the charge, the matter was handled pursuant to Va. Code §19.2-298.02 as a deferred disposition. The review and anticipated dismissal were to take place on July 5th, 2023 but will have to be continued due to Defendant's continued incarceration.

32. Mr. Sharaf is not a risk of flight and there are reasonable conditions to secure his appearance should the Court have such concerns.

33. Federal law enforcement seized Mr. Sharaf's United States and Jordanian passports.[3] Without a passport, Mr. Sharaf is physically unable to leave the country.

34. Mr. Sharaf lives with his wife of 33 years and his adult daughter in the home they purchased in Centreville, Virginia since 2016.

35. Mr. Sharaf has long-standing ties to the area as well as extensive family both in Virginia (his wife, 2 adult children, 1 granddaughter, 2 brothers and numerous nieces and nephews) as well as in Houston, Texas (2 adult daughters and 3 grandchildren).

36. Mr. Sharaf's family members love him, care deeply for him and have been in near-constant contact with undersigned counsel regarding the status of Mr. Sharaf's case and his confinement.

37. If the Court is concerned about Mr. Sharaf's potential risk of flight despite the seizure of his passports, the Court may impose reasonable conditions including those recommended by Pretrial Services to assuage any such concern and ensure to Mr. Sharaf's appearance.

---

[3] Law enforcement officials seized three passports: (1) one valid United States passport in the name Rayan Sharaf; (2) one valid Jordanian passport in the name Feras Ghousheh; and (3) one invalid Jordanian passport in the name Feras Ghousheh. Per Mr. Sharaf, Jordanian authorities continue to issue government documents pursuant to the name given at birth, Feras Ghousheh, though they are aware of the name change in the United States to 'Rayan Sharaf' and both names are linked as aliases in Jordanian governmental databases.

38. Pretrial detention in a complicated financial crimes matter which may not be resolved for a significant period of time is unwarranted and unreasonable absent extenuating circumstances which simply do not exist for Mr. Sharaf.

39. Mr. Sharaf has been forthright and cooperative with authorities in this matter and has agreed to enter into a plea agreement with respect to this offense. His base level score with respect to sentencing guidelines is 7 with an additional 12 points added as a result of the amount of the loss incurred (over $250,000).

40. While the parties are free to argue additional enhancements or reductions at sentencing, by taking responsibility for his actions the government has agreed to move at sentencing to reduce Defendant's score by an additional point which would bring his initial sentencing score to 16, reflecting a sentencing range of 21-27 months.[4]

41. At the time of the detention hearing presided over by the magistrate judge, the government referenced potentially indicting Defendant with additional counts including charges that would have carried a mandatory minimum period of incarceration as potential incentive for Mr. Sharaf to flee.

42. As a result of the agreement between the parties, the government no longer seeks to bring those additional counts and the amount of potential incarceration Defendant faces is significantly more defined.

43. Defendant further understands that to the extent he is able to make significant contributions toward his restitution prior to sentencing it would go a long way

---

[4] If sentenced after November 1st, amendments to the applicable guidelines would likely decrease Mr. Sharaf's score by 2 additional points for his lack of previous criminal history. A score of 14 would reflect a sentencing range of 15-21 months.

to showing the government and This Court his good faith intention to repay the victim financial institutions for their losses.

44. In short, Defendant has every reason to abide by the orders of this Court, comply with Pretrial services and attempt to pay as much in restitution as possible prior to his anticipated sentencing in this matter.

WHEREAS Defendant RAYAN SHARAF respectfully requests This Honorable Court GRANT Defendant's motion to revoke the detention order entered on June 9th, 2023 and admit Defendant to pre-trial release in this matter subject to whatever conditions this Court deems reasonable and necessary.

Respectfully submitted,

RAYAN SHARAF

By Counsel

_____/s/ *Sebastian M. Norton*_____
Sebastian M. Norton, VSB #82474
King, Campbell, Poretz & Mitchell PLLC
118 N. Alfred Street
Alexandria, VA 22314
(703) 683-7070 (o)
(703) 652-6010 (f)
sebastian@kingcampbell.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of July, 2023, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will serve counsel of records.

                                            /s/ *Sebastian M. Norton*
                                    Sebastian M. Norton, VSB #82474
                                    King, Campbell, Poretz & Mitchell PLLC
                                    118 N. Alfred Street
                                    Alexandria, VA 22314
                                    (703) 683-7070 (o)
                                    (703) 652-6010 (f)
                                    sebastian@kingcampbell.com
                                    *Counsel for Defendant*